IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

STEPHEN TRAIN,

       Plaintiff,

vs.                                  No. CIV 08-0152  JB/RLP

CITY OF ALBUQUERQUE, OFFICER
SIMMONS, OFFICER PETTIT, AND
OFFICER WERLEY, City of Albuquerque
Police Officers,

       Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Plaintiff's Motion for Summary Judgment,

filed December 11, 2008 (Doc. 18).  The Court held a hearing on March 11, 2009.  The primary

issues are: (i) whether Defendant Officer Pettits' and Defendant Officer Simmons' entry into

Plaintiff Stephen Train's apartment without consent violated a clearly established constitutional

right; (ii) whether Pettit and Simmons violated Train's constitutional rights by conducting a

protective sweep of Train's apartment; and (iii) whether the search that Pettit and Simmons

conducted amounted to the violation of a clearly established constitutional right.  Because Pettit and

Simmons had no warrant, and because there were no exigent circumstances justifying the search,

the Court finds that Train is entitled to summary judgment on his constitutional claim for the illegal

search.  Because the Court is granting summary judgment in favor of Train regarding the search, the

Court need not reach the issues of the protective sweep or the initial entry into the home.

## FACTUAL BACKGROUND

Many of the material facts in this case are undisputed.  Defendant City of Albuquerque

employs Simmons, Officer Werley, and Pettit as police officers.  See Defendants' Answer to Complaint ¶ 4, at 1, filed February 12, 2008 (Doc. 4)("Answer")(admitting).  On November 16, 2006, in response to a "911" call,  Simmons and Pettit went to an Albuquerque apartment located at 1033 Madeira, S.E., Apartment 103.  Train and Heather Ellzey occupied this apartment together in a boyfriend/girlfriend relationship.

Ellzey's friend, Danielle O'Neill, was concerned about Ellzey's safety and made the 911 call. As the court heard on the recording of the 911 call at the suppression hearing in Train's criminal case, O'Neill stated that she had just seen Train act in a violent manner, and heard yelling and screaming.  O'Neill knew that Ellzey was in the apartment with Train and that Train had been in possession of a firearm at a party one or two nights earlier.  See United States v. Train, Memorandum Opinion and Order at 3, No. CR 07-0041 LH, filed July 10, 2007 (Doc. 38)("Memorandum Opinion and Order").

The officers arrived at the apartment at about 2:00 p.m.  See Answer ¶ 6, at 2 (admitting). Simmons knocked on the door, and Ellzey answered.  Simmons and Pettit saw Train in the apartment.  Train asserts that the officers pointed their weapons at him; however, for the purpose of this motion, the Court must consider the facts in the light most favorable to the Defendants, who admit drawing their firearms and pointing them in the low-ready position.  See id. (admitting). Accordingly, the Court will assume, for purposes of this motion, that Simmons and Pettit drew their firearms and pointed them at the low-ready position.  See id.

Simmons and Pettit told Train to put his hands on his head, turn around, and back out of the apartment.  See id.  Train complied with the officers' orders.  When Train got outside the apartment, Simmons patted him down and placed him in handcuffs.  See id. ¶ 7, at 2 (admitting).  Train told Simmons and Pettit that they needed a warrant to enter the apartment.  See id. ¶ 8, at 2 (admitting).

-2-

At the hearing on the motion to suppress in the criminal case, the Honorable C. LeRoy Hansen, Senior United States District Judge, found that, while standing outside the door of the apartment in handcuffs, Train stated something to the effect of "you are not allowed to go in there – do you understand?"  Memorandum Opinion and Order at 4.  Pettit then performed a protective sweep of the apartment and found no other people.  See id.  Train was put into the squad car.  See id.   Train alleges that Ellzey went into the apartment and that Simmons followed her without specific consent.  See id.

While there is no dispute that Ellzey and Simmons entered the apartment, Simmons contends that he entered to render medical assistance to Ellzey and to obtain a written statement of Train's actions.  See Transcript of Suppression Hearing in Front of Judge Hansen at 21:23-22:5 (taken May 30, 2007)("Suppression Hearing").  Train contends that, once inside the apartment, Simmons asked Ellzey for permission to search the apartment.  The Defendants contend, however, that Ellzey told Simmons and Pettit that Train had hidden a gun in the apartment and that she wanted them to take the gun.  It is undisputed that Ellzey signed a consent to search form.  See Motion ¶ 12, at 5; Defendants' Response to Plaintiff's Motion for Summary Judgment ¶ 12, at 4, filed February 17, 2009 (Doc. 30)("Response").

Although the record is not clear on the details, it appears that Simmons found a gun in the course of his search of the apartment.  Approximately an hour and a half after the initial call, Werley arrived and removed a firearm that had been discovered in the apartment.  See Transcript of Hearing at 16:20-25 (Kennedy, Court)("Tr.").[1]

Following the incident, Train was indicted for unlawful possession of a firearm.  See Answer

[1]  The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version.  Any final transcript may contain slightly different page and/or line numbers.

¶ 14, at 3.  In his criminal case, Train filed a motion to suppress evidence of the firearm based on the contention that the entry into and search of the apartment was unlawful, and that the consent form that Ellzey signed was invalid.  <u>See</u> Answer ¶ 15, at 3.  Judge Hansen in the criminal case held a suppression hearing on May 30, 2007, and on July 10, 2007, Judge Hansen found that the consent form that Ellzey signed was invalid and that Train's statement to the officers not to enter the apartment invalidated her consent.   Judge Hansen also found that there were no exigent circumstances justifying the entry and search of the apartment.  <u>See</u> Response ¶ 17, at 4.

### <u>PROCEDURAL BACKGROUND</u>

Train brought this lawsuit in state court for violations of his rights under the Fourth Amendment to the United States Constitution.  The Defendants filed a notice of removal, removing this case to federal court, on February 8, 2008.  <u>See</u> Notice of Removal at 1 (Doc. 1).  Train moves the Court for summary judgment against Simmons, Pettit, and Werley.  At the hearing, Train clarified that he is alleging constitutional violations for three separate events: (i) the protective sweep; (ii) the entry into Train's apartment without a warrant; and (iii) the warrantless search.  <u>See</u> Tr. at 9:6-12 (Court & Kennedy).

In his motion, Train initially argued that, under principles of collateral estoppel, the Defendants should be precluded from relitigating the issues resolved in the criminal proceeding.  <u>See</u> Motion at 5.  At the hearing, however, Train abandoned the collateral-estoppel argument and conceded that, in light of recent Supreme Court case law, the doctrine of collateral estoppel does not support summary judgment in this case.  <u>See</u> Tr. at 4:7-15 (Kennedy).

The Defendants argued at the hearing that exigent circumstances justified the officers' following Ellzey and entering the apartment.  <u>See</u> <u>id.</u> at 10:11-19 (Court & Levy).  The Defendants conceded, however, that exigent circumstances would not justify the protective sweep or the search

and seizure that occurred.  See id.  Moreover, the Defendants conceded that, in light of Georgia v. Randolph, 547 U.S. 103 (2006), upon which Judge Hansen relied in Train's criminal proceeding to find that the search was illegal, justification for the search based on Ellzey's consent was "a tough one to argue."  Tr. at 11:15-16 (Levy).

At the hearing, the parties agreed that, if the Court granted summary judgment in favor of Train regarding the search, the Court would not have to discuss the protective sweep or the entry into the house.  See Tr. at 21:1-7 (Court, Kennedy, & Levy).  Thus, the parties agreed that, if the Court granted summary judgment on the search, the trial would proceed on damages for the search. See id.

## LAW REGARDING QUALIFIED IMMUNITY

As the Court has previously recognized in Holguin v. City of Albuquerque, No. CIV 05-0302 JB/RHS, 2006 U.S. Dist. LEXIS 29489 (D.N.M. March 1, 2006):

> Qualified immunity recognizes the legitimate "need to protect officials who are required to exercise their discretion and the related public interest in encouraging the vigorous exercise of official authority."  Harlow v. Fitzgerald, 457 U.S. 800, 807 (1982)(quoting Butz v. Economou, 438 U.S. 478, 506 (1978)).  Qualified immunity therefore "provides ample protection to all but the plainly incompetent or those who knowingly violate the law."  Malley v. Briggs, 475 U.S. 335, 341 (1986).

2006 U.S. Dist. LEXIS 29489, at *15-16.  Qualified immunity protects federal and state officials from liability for discretionary functions, and from "the unwarranted demands customarily imposed upon those defending a long drawn-out lawsuit."  Siegert v. Gilley, 500 U.S. 226, 232 (1991).  To balance the interests of the complaining individual, and the burden put upon the government official in defending such cases, "courts recognize the affirmative defense of qualified immunity, which protects 'all but the plainly incompetent or those who knowingly violate the law.'"  Gross v. Pirtle, 245 F.3d 1151, 1155 (10th Cir. 2001)(quoting Malley v. Briggs, 475 U.S. 335, 341 (1986)).

1.      **Rationale for Qualified-Immunity Doctrine.**

Qualified immunity is judicially created and rooted in public policy.  The fear of suit may have a chilling effect on official decision-making, seriously deterring officials from exercising judgment with the decisiveness important to their office.  See Richardson v. McKnight, 521 U.S. 399, 407 (1997)(describing the purposes of qualified immunity "as protecting government's ability to perform its traditional functions by providing immunity where necessary to preserve the ability of government officials to serve the public good or to ensure that talented candidates were not deterred by the threat of damages suits from entering public service.")(internal quotations omitted); Wyatt v. Cole, 504 U.S. 158, 165 (1992)(detailing the public policy basis for the qualified immunity privilege). In  Harlow v. Fitzgerald, 457 U.S. 800 (1982), the Supreme Court of the United States stated:

> It cannot be disputed seriously that claims frequently run against the innocent as well as the guilty -- at a cost not only to the defendant officials, but to society as a whole. . . . [T]here is the danger that fear of being sued will dampen the ardor of all but the most resolute, or the most irresponsible [public officials], in the unflinching discharge of their duties.

Id. at 814 (internal citations and quotations omitted).

2.      **Two-Part Test for Qualified Immunity.**

Until recently, courts were required to apply a two-step analysis in deciding whether a party is entitled to qualified immunity.  The broad protection afforded by qualified immunity gives officials "a right, not merely to avoid 'standing trial,' but also to avoid the burdens of 'such pretrial matters as discovery.'"  Holland ex rel. Overdorff v. Harrington, 268 F.3d 1179, 1185 (10th Cir. 2001)(quoting Behrens v. Pelletier, 516 U.S. 299, 308 (1996)).  When a defendant raises the affirmative defense of qualified immunity, "a ruling on that issue should be made early in the proceedings so that the costs and expenses of trial are avoided where the defense is dispositive."

Saucier v. Katz, 533 U.S. 194, 200 (2001), overruled in part by Pearson v. Callahan, 129 S. Ct. 808, 818-20 (2009).  The qualified immunity privilege is "'an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial.'"  Id. at 200-201 (quoting Mitchell v. Forsyth, 472 U.S. 511, 526 (1985)).

Once a defendant asserts the affirmative defense of qualified immunity, the burden then shifts to the plaintiff to establish a violation of a constitutional or statutory right by the defendant.  See Gross v. Pirtle, 245 F.3d at 1155; Currier v. Doran, 242 F.3d 905, 917 (10th Cir. 2001), cert. denied, 534 U.S. 1019 (2001); Scull v. New Mexico, 236 F.3d 588, 595 (10th Cir. 2000).

> A court required to rule upon the qualified immunity issue must consider, then, this threshold question: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?  This must be the initial inquiry. . . .  In the course of determining whether a constitutional right was violated on the premise alleged, a court might find it necessary to set forth principles which will become the basis for a holding that a right is clearly established.  This is the process for the law's elaboration from case to case, and it is one reason for our insisting upon turning to the existence or nonexistence of a constitutional right as the first inquiry.  The law might be deprived of this explanation were a court simply to skip ahead to the question whether the law clearly established that the officer's conduct was unlawful in the circumstances of the case.

Saucier v. Katz, 533 U.S. at 201 (citations omitted).

If a plaintiff meets his or her burden of establishing a violation of a constitutional right, he or she must demonstrate that the right alleged to have been violated was clearly established at the time of the defendant's allegedly unlawful conduct.  See Holland ex rel. Overdorff v. Harrington, 268 F.3d at 1186; Gross v. Pirtle, 245 F.3d at 1156; Albright v. Rodriguez, 51 F.3d 1531, 1534 (10th Cir. 1995).  If the plaintiff fails to satisfy either part of this two-part inquiry, the court must grant the defendant qualified immunity.  See Holland ex rel. Overdorff v. Harrington, 268 F.3d at 1186; Gross v. Pirtle, 245 F.3d at 1156; Albright v. Rodriguez, 51 F.3d at 1535.  "In short, although we will review the evidence in the light most favorable to the nonmoving party . . . the record must

clearly demonstrate the plaintiff has satisfied his heavy two-part burden; otherwise, the defendants are entitled to qualified immunity." Holland ex rel. Overdorff v. Harrington, 268 F.3d at 1186 (citing Medina v. Cram, 252 F.3d 1124, 1128 (10th Cir. 2001)).

**3. Clearly Established Law.**

Qualified immunity shields state officials from liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. at 818.  A clearly established right is generally defined as a right so thoroughly developed and consistently recognized under the law of the jurisdiction as to be "indisputable" and "unquestioned." Zweibon v. Mitchell, 720 F.2d 162, 172-173 (D.C. Cir. 1983), cert. denied, 469 U.S. 880 (1984).  "Ordinarily, in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." Strepka v. Miller, 2001 WL 1475058 at * 5 (10th Cir. 2001)(citing Currier v. Doran, 242 F.3d at 923).  See Medina v. City and County of Denver, 960 F.2d 1493, 1498 (10th Cir. 1992).  "In determining whether the right was 'clearly established,' the court assesses the objective legal reasonableness of the action at the time of the alleged violation and asks whether the 'the contours of the right [were] sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" Holland ex rel. Overdorff v. Harrington, 268 F.3d at 1186 (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)).

As the Supreme Court has observed, it is generally not necessary to find a controlling decision declaring the "very action in question . . . unlawful." Anderson v. Creighton, 483 U.S. at 640.  However, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Id. at 635.

In the Tenth Circuit, to carry the burden of identifying a clearly established right, the plaintiff "must demonstrate a substantial correspondence between the conduct in question and prior law allegedly establishing that the defendant's actions were clearly prohibited." Trotter v. Regents of the University of New Mexico, 219 F.3d 1179, 1184 (10th Cir. 2000)(quoting Hannula v. City of Lakewood, 907 F.2d 129, 131 (10th Cir. 1990), abrogated on other grounds by Dixon v. Richer, 922 F.2d 1456, 1461 (10th Cir. 1991)). Moreover, that an official action may be in violation of an agency's internal procedures does not, in itself, violate any clearly established constitutional right. See Herring v. Keenan, 218 F.3d 1171, 1180-81 (10th Cir. 2000)(explaining "that the fact that an official discloses information in violation of his own internal procedures does not make the disclosure a violation of a clearly established constitutional right to privacy."), cert. denied, 534 U.S. 840 (2001); Roska ex rel. Roska v. Peterson, 328 F.3d 1230, 1251 (10th Cir. 2003)("In considering the 'objective legal reasonableness' of the state officer's actions, one relevant factor is whether the defendant relied on a state statute, regulation, or official policy that explicitly sanctioned the conduct in question.").

The plaintiff's burden to establish that the law is clearly established "must be undertaken in light of the case's specific context, not as a broad proposition." Saucier v. Katz, 533 U.S. at 201. "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation." Id. at 202. "This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent." Mimics, Inc. v. Village of Angel Fire, 394 F.3d at 842 (internal citations and quotations omitted). If a reasonable person could have believed that the actions were lawful, "defendants are entitled to dismissal before discovery." Workman v. Jordan, 958 F.2d 332,

336 (10th Cir. 1992).

      **4.**        **Pearson v. Callahan.**

      The Supreme Court recently revisited the proper procedure for lower courts to evaluate a qualified-immunity defense.  In Pearson v. Callahan, the Supreme Court held that, "while the sequence set forth [in Saucier v. Katz] is often appropriate, it should no longer be regarded as mandatory."  129 S. Ct. at 818.  Rather, lower courts "should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances of the particular case at hand."  Id.  The Supreme Court also noted that, while no longer mandatory, the protocol outlined in Saucier v. Katz would often be beneficial.  See Pearson v. Callahan, 129 S. Ct. at 819.

      While leaving the determination whether to adhere to the Saucier v. Katz sequence in the lower courts' sound discretion, the Supreme Court mentioned various circumstances where such sequencing might be undesirable.  For example, there are cases in which it is plain that a right is not clearly established, but less obvious whether such a right in fact exists.  See Pearson v. Callahan, 129 S. Ct. at 819.  Under such circumstances, it might be considered a waste of resources to engage in analysis under the first prong – whether a constitutional right was violated – when it is already obvious that, even if such a right existed, it was not clearly established.  See id.

      Another concern arises out of the fact that qualified immunity is usually raised at the pleading stage.  The Supreme Court in Pearson v. Callahan observed that the "two-step" inquiry can be an uncomfortable exercise where "the answer [to] whether there was a violation may depend on a kaleidoscope of facts not yet fully developed."  Id. (brackets in original)(internal quotation marks and citation omitted).  Under such circumstances, it may be more advantageous to analyze whether the asserted right was clearly established rather than reaching the merits.  Id.

Adherence to <u>Saucier v. Katz</u> also poses the potential to lead to bad decision-making.  For example, in some cases that the district courts encounter, "the briefing of constitutional questions is woefully inadequate," and "constitutional questions may be prematurely and incorrectly decided in cases where they are not well presented."  <u>Pearson v. Callahan</u>, 129 S. Ct. at 820 (internal quotation marks and citations omitted).  Moreover, while a court might adhere to the formalities of <u>Saucier v. Katz</u> in discussing the two prongs in sequence, the court's internal processes might involve making a decision based on whether the right was clearly established and only then turning to the more difficult question of the merits.  <u>See</u> <u>Pearson v. Callahan</u>, 129 S. Ct. at 819.  In some such cases, there is a risk that the district court will not devote as much care as it should to deciding the constitutional issue.  <u>See</u> <u>id.</u>

"Rigid adherence to the <u>Saucier</u> rule may make it hard for affected parties to obtain appellate review of constitutional decisions that may have a serious prospective effect on their operations."  <u>Pearson v. Callahan</u>, 129 S. Ct. at 820.  For example, where a court holds that a constitutional violation occurred, but that the violation was not clearly established, there is an appearance of unappealability, because the defendant is the prevailing party on the issue of qualified immunity.  <u>See</u>  <u>Pearson v. Callahan</u>, 129 S. Ct. at 820.  At the same time, the prevailing party faces the choice of changing its operations to comport with the new finding that it violated a constitutional right, or of adhering to its established practice, even though that practice has now been held to result in a violation of constitutional rights.  Such a choice is difficult to take for a defendant who, in effect, has no chance to appeal the determination that a constitutional right in fact occurred. <u>See</u> <u>id.</u> at 820.

Finally, an obligation to strictly follow <u>Saucier v. Katz</u> runs up against the "general rule of constitutional avoidance and runs counter to the older, wiser counsel not to pass on questions of constitutionality . . . unless such adjudication is unavoidable."  <u>Pearson v. Callahan</u>, 129 S. Ct. at

821 (internal quotation marks and citations omitted).  Furthermore, the first prong's purpose of furthering the development of constitutional law might not be meaningfully advanced in cases where the determination whether a right was violated is so fact bound that it is unlikely to provide guidance in future cases.  See id. at 12.

## LAW REGARDING MOTIONS FOR SUMMARY JUDGMENT

According to rule 56(c) of the Federal Rules of Civil Procedure, summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  The movant bears the initial burden of "show[ing] that there is an absence of evidence to support the nonmoving party's case." Bacchus Indus., Inc. v. Arvin Indus., Inc., 939 F.2d 887, 891 (10th Cir. 1991)(internal quotation marks omitted). See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

Once the movant meets this burden, rule 56(e) requires the nonmoving party to designate specific facts showing that there is a genuine issue for trial.  See Celotex Corp. v. Catrett, 477 U.S. at 324; Anderson v. Liberty Lobby, Inc., 477 U.S. at 256; Vitkus v. Beatrice Co., 11 F.3d 1535, 1539 (10th Cir. 1993)("However, the nonmoving party may not rest on its pleadings but must set forth specific facts showing that there is a genuine issue for trial as to those dispositive matters for which it carries the burden of proof.")(internal quotation marks omitted); Otteson v. United States, 622 F.2d 516, 519 (10th Cir. 1980)("However, 'once a properly supported summary judgment motion is made, the opposing party may not rest on the allegations contained in his complaint, but must respond with specific facts showing the existence of a genuine factual issue to be tried.'")(quoting Coleman v. Darden, 595 F.2d 533, 536 (10th Cir. 1979)).  The party opposing a motion for summary judgment must "set forth specific facts showing that there is a genuine issue for trial as to those

-12-

dispositive matters for which it carries the burden of proof." <u>Applied Genetics Int'l, Inc. v. First</u> <u>Affiliated Sec., Inc.</u>, 912 F.2d 1238, 1241 (10th Cir. 1990).  Rule 56 provides that "an opposing party may not rely merely on allegations or denials in its own pleadings; rather, its response must – by affidavits or as otherwise provided in this rule – set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2).

It is not enough for the party opposing a properly supported motion for summary judgment to "rest on mere allegations or denials of his [or her] pleadings." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 256(1986).  <u>See</u> <u>Abercrombie v. City of Catoosa</u>, 896 F.2d 1228, 1231 (10th Cir. 1990).  "The non-moving party cannot avoid summary judgment by repeating conclusory opinions, allegations unsupported by specific facts, or speculation." <u>Colony Nat'l Ins. Co. v. Omer</u>, No. 07-2123, 2008 WL 2309005 at * 1 (D. Kan. June 2, 2008)(citing Fed. R. Civ. P. 56(e) and <u>Argo v. Blue</u> <u>Cross and Blue Shield of Kan., Inc.</u>, 452 F.3d 1193, 1199 (10th Cir. 2006)).  "In responding to a motion for summary judgment, 'a party cannot rest on ignorance of facts, on speculation, or on suspicion and may not escape summary judgment in the mere hope that something will turn up at trial.'" <u>Colony Nat'l Ins. Co. v. Omer</u>, 2008 WL 2309005 at *1 (quoting <u>Conaway v. Smith</u>, 853 F.2d 789, 794 (10th Cir. 1988)).

Genuine factual issues must exist that "can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. at 250.  The mere existence of a scintilla of evidence will not avoid summary judgment.  <u>See</u> <u>Vitkus</u> <u>v. Beatrice Co.</u>, 11 F.3d at 1539.  There must be sufficient evidence on which the factfinder could reasonably find for the nonmoving party.  <u>See</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. at 251 (quoting <u>Schuylkill and Dauphin Improvement Co. v. Munson</u>, 81 U.S. 442, 448 (1871)); <u>Vitkus v.</u> <u>Beatrice Co.</u>, 11 F.3d at 1539.  "[T]here is no evidence for trial unless there is sufficient evidence

favoring the nonmoving party for a jury to return a verdict for that party.  If the evidence is merely colorable . . . or is not significantly probative, . . .  summary judgment may be granted."  Anderson v. Liberty Lobby, Inc., 477 U.S. at 249 (internal citations omitted).  Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

### RELEVANT LAW REGARDING SEARCH AND SEIZURE

The Fourth Amendment protects a person's right to be secure against unreasonable search and seizure.  The hallmark of the Fourth Amendment is reasonableness.  "It is a basic principle of Fourth Amendment law that searches and seizures inside a home without a warrant are presumptively unreasonable."  Payton v. New York, 445 U.S. 573, 586 (1980).  The Supreme Court has stated: "[P]hysical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed."  United States v. United States District Court, 407 U.S. 297, 313 (1972).

"The Fourth Amendment recognizes a valid warrantless entry and search of premises when police obtain the voluntary consent of an occupant who shares, or is reasonably believed to share, authority over the area in common with a co-occupant who later objects to the use of evidence so obtained."  Georgia v. Randolph, 547 U.S. 103, 106 (2006).  Nevertheless, the Supreme Court has held that consent by one occupant of a residence for law enforcement search shared premises does not override a physically present inhabitant who expressly refuses to consent to a search by law enforcement.  Id. at 122-23.  In other words, where no independent grounds justify the entry into and search of a home, and where a physically present co-tenant expressly refuses to give consent while another cotenant purports to grant consent, the entry and/or search will be illegal.  See id.

-14-

## ANALYSIS

This case presents a straightforward application of the rule articulated in <u>Georgia v. Randolph</u>.  Simmons and Pettit had consent from Ellzey, while they also had Train's express refusal to give consent.  The Defendants do bring up any other facts that would justify the search.  The Court will therefore grant the motion for summary judgment on the issue of the search.

## I.   THE SEARCH VIOLATED TRAIN'S CLEARLY ESTABLISHED CONSTITUTIONAL RIGHTS.

There is no dispute that: (i) Train refused consent for Simmons and Pettit to conduct the search that led to the discovery of the firearm; (ii) Simmons followed Ellzey into the home; and (iii) Ellzey signed a written consent for the officers to search the home.  Thus, this case is similar to <u>Georgia v. Randolph</u>.  In <u>Georgia v. Randolph</u>, the police responded to a domestic disturbance where the defendant's wife complained to police.  <u>See</u> 547 U.S. at 106.  The defendant's wife volunteered that there was evidence of drug use in the house.  <u>See id.</u> at 107.  The police officers sought permission from the defendant to search the house, and the defendant refused.  <u>See id.</u>  The defendant's wife, however, "readily" gave her consent to the police to conduct a search.  <u>Id.</u>

Under those circumstances, the Supreme Court held that the search, unsupported by a valid justification independent of the wife's consent, was illegal.  <u>See id.</u> at 114.  The Supreme Court stated:

> Since the co-tenant wishing to open the door to a third party has no recognized authority in law or social practice to prevail over a present and objecting co-tenant, his disputed invitation, without more, gives a police officer no better claim to reasonableness in entering than the officer would have in the absence of any consent at all.

<u>Id.</u>  The officers in this case – Pettit and Simmons – were also responding to a potential domestic dispute.  Train's live-in girlfriend, Ellzey, consented to a search over Train's protestations and

refusal to give consent.  Moreover, the Defendants argue that Ellzey, like the defendant's wife in Georgia v. Randolph, informed Pettit and Simmons of evidence of a crime – in this case, the presence of a firearm which Train was not authorized to possess.  Thus, Georgia v. Randolph controls the outcome of this case.

The Court is not aware of any valid independent justifications Pettit and Simmons had for the search.  Although the Defendants have discussed exigent circumstances, any exigent circumstances, if such circumstances existed, are not relevant to the Pettit's and Simmon's decision to search Train's apartment.  By the time of the search, both individuals involved in the domestic disturbance were outside the apartment talking to police.  Pettit and Simmons therefore did not need to conduct a search to assure their safety or that of Ellzey.  Ultimately, Pettit and Simmons did not have a sound basis to conduct a warrantless search of the apartment.

The Tenth Circuit has explained:

> When a defendant asserts a qualified immunity defense, the burden shifts to the plaintiff, who must first establish that the defendant violated a constitutional right. Reynolds v. Powell, 370 F.3d 1028, 1030 (10th Cir. 2004). "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." Saucier v. Katz, 533 U.S. 194, 201 (2001). If, on the other hand, a violation has been shown, the plaintiff must then show that the constitutional right was clearly established.  See id.

Vondrak v. City of Las Cruces, 535 F.3d 1198, 1204 (10th Cir. 2008).  The Court believes, given the policy underlying the qualified-immunity defense, that the plaintiff's task is the same where the plaintiff has moved for summary judgment, and where the defendants have raised qualified immunity as a defense.  In this case, the Defendants have asserted qualified immunity.  Thus, to win on summary judgment, Train must show that the Defendants violated his constitutional right and that the right was clearly established at the time.  "[F]or a right to be clearly established, 'there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority

from other courts must have found the law to be as the plaintiff maintains.'" Id. at 1205 (quoting Medina v. City of Denver, 960 F.2d 1493, 1498 (10th Cir. 1992)).

Given the factual similarities between this case and Georgia v. Randolph, the Court believes the law was clearly established by the time Pettit and Simmons conducted the search of Train's apartment.  Georgia v. Randolph was decided March 22, 2006.  The search in this case occurred on November 16, 2006.  See Memorandum Opinion and Order at 3.  In other words, the Supreme Court decided a case with substantially similar facts approximately eight months before the conduct at issue in this case.  Thus, there was on-point Supreme Court precedent on the books by the time of the search in this case.  By November 16, 2006, the law was clearly established that police officers cannot rely on the consent of one co-tenant in the face of the other co-tenant's refusal to justify a warrantless search of a residence.

## II.   THE COURT DOES NOT HAVE TO DECIDE WHETHER THE PROTECTIVE SWEEP OR CROSSING THE THRESHOLD OF TRAIN'S APARTMENT CONSTITUTED VIOLATIONS OF CLEARLY ESTABLISHED RIGHTS.

At the hearing, the parties agreed that, if the Court granted summary judgment in favor of Train regarding the search, the Court would not have to discuss the protective sweep or the entry into the house.  See Tr. at 21:1-7 (Court, Kennedy, & Levy).  Thus, the parties agreed that, if the Court granted summary judgment on the search, the trial would proceed on damages for the search. See id.  Because the Court has determined that the search was illegal, the Court will follow through with the agreement at the hearing.  The Court will not reach the other issues, and this case will proceed to trial on damages.

   **IT IS ORDERED** that the Plaintiff's Motion for Summary Judgment is granted in part and

denied in part.  The Court finds that the search was a violation of clearly established constitutional

rights.  The Court declines to address the other grounds for Plaintiff Steven Train's motion.

_____
UNITED STATES DISTRICT JUDGE

*Counsel*:

Mary Louise Boelcke
Law Office of Mary Louise Boelcke
Albuquerque, New Mexico

 -- and --

Joseph P. Kennedy
Shannon L. Kennedy
Kennedy Law Firm
Albuquerque, New Mexico

        *Attorneys for the Plaintiff*

Robert M. White
Albuquerque City Attorney's Office
Albuquerque, New Mexico

-- and --

Kathryn Levy
City of Albuquerque Legal Department
Albuquerque, New Mexico

        *Attorneys for the Defendants*