IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

STEPHEN TRAIN,

       Plaintiff,

vs.                                      No. CIV 08-0152 JB/RLP

CITY OF ALBUQUERQUE, OFFICER
SIMMONS, OFFICER PETTIT, AND
OFFICER WERLEY, City of Albuquerque
Police Officers,

       Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Plaintiff's Motion in Limine I Exclusion of Evidence Related to Police Investigation of Domestic Violence, filed April 28, 2009 (Doc. 38). The Court held a hearing on May 5, 2009. The primary issues are: (i) whether the Court should exclude the testimony of Heather Ellzey and Danielle O'Neill; and (ii) whether the Court should exclude evidence of Plaintiff Stephen Train's criminal defense costs, loss of income, and emotional distress damages resulting from the unlawful search that led to the filing of gun possession charges against him. Because the testimony of Ellzey and O'Neill is not relevant to any issues remaining for trial, the Court will not allow the Defendants to introduce that evidence. Because the Court also finds that Train may seek damages for the costs he incurred defending himself against the federal criminal charges, for the loss of income from the ten-month period of incarceration in a federal facility, and for the emotional distress attendant to his incarceration in the federal facility, the Court will allow Train to introduce evidence on those issues.

## FACTUAL BACKGROUND

The facts underlying this lawsuit have largely been set forth elsewhere.  See Memorandum

Opinion and Order at 1-4, entered April 13, 2009 (Doc. 33)("MOO").  As relevant to this motion,

the City of Albuquerque employs Defendants Officer Simmons, Officer Werley, and Officer Pettit

as police officers.  See Defendants' Answer to Complaint ¶ 4, at 1, filed February 12, 2008 (Doc.

4)("Answer")(admitting).  On November 16, 2006, in response to a "911" call,  Simmons and Pettit

went to an Albuquerque apartment located at 1033 Madeira, S.E., Apartment 103.  Train and Ellzey

occupied this apartment together in a boyfriend/girlfriend relationship.

Ellzey's friend, O'Neill, was concerned about Ellzey's safety and made the 911 call.  As the

Court heard on the recording of the 911 call at the suppression hearing in Train's criminal case,

O'Neill stated that she had just seen Train act in a violent manner, and heard yelling and screaming.

O'Neill knew that Ellzey was in the apartment with Train and that Train had been in possession of

a firearm at a party one or two nights earlier.  See United States v. Train, Memorandum Opinion and

Order at 3, No. CR 07-0041 LH, filed July 10, 2007 (Doc. 38)("Memorandum Opinion and Order").

The officers arrived at the apartment at about 2:00 p.m.  See Answer ¶ 6, at 2 (admitting).

Simmons knocked on the door, and Ellzey answered.  Simmons and Pettit saw Train in the

apartment.  Simmons and Pettit told Train to put his hands on his head, turn around, and back out

of the apartment.  See id.  Train complied with the officers' orders.  When Train got outside the

apartment, Simmons patted him down and placed him in handcuffs.  See id. ¶ 7, at 2 (admitting).

Train told Simmons and Pettit that they needed a warrant to enter the apartment.  See id. ¶

8, at 2 (admitting).  At the hearing on the motion to suppress in the criminal case, the Honorable C.

LeRoy Hansen, Senior United States District Judge, found that, while standing outside the door of

the apartment in handcuffs, Train stated something to the effect of "you are not allowed to go in

there – do you understand?"  Memorandum Opinion and Order at 4.  Pettit then performed a protective sweep of the apartment and found no other people.  <u>See id.</u>  Train was put into the squad car.  <u>See id.</u>  Train alleges that Ellzey went into the apartment and that Simmons followed her without specific consent. <u>See id.</u>

While there is no dispute that Ellzey and Simmons entered the apartment, Simmons contends that he entered to render medical assistance to Ellzey and to obtain a written statement of Train's actions.  <u>See</u> Transcript of Suppression Hearing in Front of Judge Hansen at 21:23-22:5 (taken May 30, 2007)("Suppression Hearing").  Train contends that, once inside the apartment, Simmons asked Ellzey for permission to search the apartment.  The Defendants contend, however, that Ellzey told Simmons and Pettit that Train had hidden a gun in the apartment, and that she wanted them to take the gun.  It is undisputed that Ellzey signed a consent to search form.  <u>See</u> Motion ¶ 12, at 5; Defendants' Response to Plaintiff's Motion for Summary Judgment ¶ 12, at 4, filed February 17, 2009 (Doc. 30)("Response").

Although the record is not clear on the details, it appears that Simmons found a gun in the course of his search of the apartment.  Approximately an hour and a half after the initial call, Werley arrived and removed a firearm that had been discovered in the apartment.  <u>See</u> Transcript of Hearing at 16:20-25 (Kennedy, Court)("Tr.").[1]

Following the incident, Train was indicted on federal charges for felon in unlawful possession of a firearm.  <u>See</u> Answer ¶ 14, at 3.  In his federal criminal case, Train filed a motion to suppress evidence of the firearm based on the contention that the entry into and search of the apartment was unlawful, and that the consent form that Ellzey signed was invalid.  <u>See</u> Answer ¶

---

[1]  The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version.  Any final transcript may contain slightly different page and/or line numbers.

15, at 3.  Judge Hansen in the criminal case held a suppression hearing on May 30, 2007, and on July 10, 2007, Judge Hansen found that the consent form that Ellzey signed was invalid and that Train's statement to the officers not to enter the apartment invalidated her consent.  Judge Hansen also found that there were no exigent circumstances justifying the entry and search of the apartment.  See Response ¶ 17, at 4.

Train contends that the gun wrongfully seized from his apartment was given to the federal government, which initiated charges of a felon in possession of a handgun.  While defending himself against the federal criminal charges, Train spent ten months incarcerated in a federal facility.

## PROCEDURAL BACKGROUND

The Court has already found that the search of Train's apartment was unlawful and granted summary judgment in Train's favor on that issue.  See MOO at 17.  This case is now set for trial on damages.  Train is seeking only compensatory damages.  See Motion in Limine I at 1.  Train contends that the compensation he seeks stems from criminal defense fees, the ten months of lost income because of his incarceration in a federal facility, and emotional distress damages while defending himself against the criminal charges and residing in a federal facility.  See id.  Train has disclaimed punitive damages and has not challenged the propriety of the investigation that led the Defendants to his home on the date of the incident.  See id. at 2.

Train contends that, given the scope of issues at trial, testimony about what prompted the police investigation and what the police discovered at the scene is irrelevant.  See id.  Train notes that the remaining Defendants, Simmons and Pettit, have listed as witnesses Ellzey, who is the alleged victim of domestic violence, and O'Neill, who is the person who initially contacted the police.  See id.  Train insists that these witnesses' testimony is irrelevant to what damages he suffered and therefore has nothing to do with the issues to be tried.  See id.  Train contends that

Simmons' and Pettit's only purpose in seeking to introduce such evidence is to bring out evidence of his bad acts and inflame the jury against him.  See id.

In response, Simmons and Pettit do not address Train's arguments regarding the admissibility of Ellzey's and O'Neill's testimony, but focus their attention on whether Train should be allowed to recover compensatory damages for his criminal defense fees, the ten-months incarceration, and emotional distress.  See Defendants' Response to Plaintiff's Motion in Limine I at 1, filed May 4, 2009 (Doc. 45)("Response").  Simmons and Pettit argue that damages must be tailored to the interest protected by the particular right in question – in this instance, the right to be free from illegal search and seizure.  See id. at 2.  Accordingly, Simmons and Pettit contend that damages for an unlawful search should not extend to post-indictment legal process because the damages incurred in that process are too unrelated to the Fourth Amendment's privacy concerns. See id. (citing Hector v. Watt, 235 F.3d 154, 157 (3d Cir. 2000)).  Simmons and Pettit also maintain that victims of unreasonable searches or seizures may recover damages directly related to the invasion of their privacy, including, where appropriate, damages for physical injury, property damage, and injury to reputation.  They maintain, however, that such victims should not be able to seek compensation for injuries that result from the discovery of incriminating evidence and consequent criminal prosecution.  See id. (citing Hector v. Watt, 235 F.3d at 157 (citing in turn Townes v. City of New York, 176 F.3d 138, 148 (2d Cir. 1999)).  Simmons and Pettit therefore urge the Court to find that Train is entitled only to nominal damages.  See Response at 2.

Train replies that, while the United States Court of Appeals for the Tenth Circuit has yet to speak on this issue, other circuit courts have permitted plaintiffs to recover damages for all foreseeable injuries stemming from a constitutional violation.  See Plaintiff's Reply in Support of Plaintiff's Motion in Limine No. I at 2, filed May 5, 2009 (Doc. 46)("Reply").  Train argues that,

under traditional tort law, a tortfeasor is liable for the natural and foreseeable consequences of his actions.  See id.  Train also argues that, without an allowance for § 1983 plaintiffs to recover reasonable fees for prevailing on a motion to suppress unlawfully seized evidence in the underlying criminal matter,  § 1983 lawsuits would have little deterrent effect and would have little benefit to plaintiffs aggrieved by unlawful searches of their homes.  See Reply at 3.

At the hearing, the parties dedicated their time to arguing the damages Train should be permitted to seek.

## LAW REGARDING RELEVANCE OF EVIDENCE

The rules of evidence contemplate the admission of relevant evidence, and the exclusion of irrelevant and potentially prejudicial evidence.  See Fed. R. Evid. 401, 402, and 403.  Under the Federal Rules of Evidence, "[e]vidence which is not relevant is not admissible."  Fed. R. Evid. 402.  Rule 401 states: "Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  Fed. R. Evid. 401.

## RELEVANT LAW REGARDING DAMAGES FOR § 1983 VIOLATIONS

In discussing the principles that should govern damages in suits brought under 42 U.S.C. § 1983, the Supreme Court of the United States has explained: "'The cardinal principle of damages in Anglo-American law is that of compensation for injury caused to plaintiff by defendant's breach of duty.'"  Carey v. Piphus, 435 U.S. 237, 254-55 (1978) (quoting 2 F. Harper & F. James, Law of Torts § 25.1, at 1299 (1956))(emphasis in Harper & James).  Writing for the Supreme Court in Carey v. Piphus, Associate Justice Lewis Powell noted that, while the rules of common law developed over the centuries "defining the elements of damages and the prerequisites for their recovery, provide the appropriate starting point for the inquiry under § 1983," he also recognized

-6-

that, "[i]t is not clear . . . that common-law tort rules of damages will provide a complete solution

to the damages issues in every § 1983 case."   Carey v. Piphus, 435 U.S. at 254-55.   Thus, the

Supreme Court in Carey v. Piphus recognized:

> In some cases, the interests protected by a particular branch of the common law of
> torts may parallel closely the interests protected by a particular constitutional right.
> In such cases, it may be appropriate to apply the tort rules of damages directly to the
> § 1983 action. . . .  In other cases, the interests protected by a particular constitutional
> right may not also be protected by an analogous branch of the common law of torts.
> . . .  In those cases, the task will be the more difficult one of adapting common-law
> rules of damages to provide fair compensation for injuries caused by the deprivation
> of a constitutional right.

Carey v. Piphus, 435 U.S. at 258.  In light of such concerns, the Supreme Court in Carey v. Piphus

held:

> [T]o further the purpose of § 1983, the rules governing compensation for injuries
> caused by the deprivation of constitutional rights should be tailored to the interests
> protected by the particular right in question – just as the common-law rules of
> damages themselves were defined by the interests protected in the various branches
> of tort law.

Carey v. Piphus, 435 U.S. at 258.

The Tenth Circuit has not spoken on the proper scope of damages for illegal searches.  Other

circuit courts, however, have discussed the issue and have come to differing conclusions.  The

United States Court of Appeals for the Third Circuit has held that "damages for an unlawful search

should not extend to post-indictment legal process, for the damages incurred in that process are too

unrelated to the Fourth Amendment's privacy concerns."   Hector v. Watt, 235 F.3d at 157.   In

Hector v. Watt, the plaintiff had successfully argued in a previous criminal proceeding that police

violated the Fourth Amendment when they seized over eighty pounds of hallucinogenic mushrooms

from the plaintiff's airplane.   See 235 F.3d at 155.   After the drugs were suppressed and the

prosecution dropped, the plaintiff brought a § 1983 suit against the officers who had conducted the

illegal seizure.  See Hector v. Watt, 235 F.3d at 157.

In reaching its conclusion that the plaintiff could not pursue compensatory damages for his costs incurred in litigating the successful motion to suppress, the Third Circuit articulated two main lines of reasoning.  First, the Third Circuit stated:

> Given the Supreme Court's mandate that we look to similar common-law causes of action, Hector appears to be on the horns of a dilemma. If his claim is categorized as being like false arrest, then his claim fails because false arrest does not permit damages incurred after an indictment, excluding all the damages he seeks. But if his claim is treated as resembling malicious prosecution, then he would face the problem that a plaintiff claiming malicious prosecution must be innocent of the crime charged in the underlying prosecution.

Id. at 156.  Thus, the Third Circuit found that, because the common-law torts to which it could analogize the plaintiff's claim for damages would not permit the plaintiff to recover his costs for defending himself and litigating the motion to suppress, he could not seek such damages under § 1983.  See Hector v. Watt, 235 F.3d at 156-57.

Second, the Third Circuit held that, even if analogies from common law do not completely inform a determination whether such damages are available, the interest that the Fourth Amendment protects – the right to privacy – do not extend to the litigation expenses incurred in defeating the motion to suppress.  See Hector v. Watt, 235 F.3d at 157.  The Third Circuit stated: "The evil of an unreasonable search or seizure is that it invades privacy, not that it uncovers crime, which is no evil at all."  Id. (citations and internal quotation marks omitted).

The United States Court of Appeals for the Second Circuit ruled in a similar fashion in Townes v. City of New York, 176 F.3d 138 (2d Cir. 1999).  In Townes v. City of New York, police seized a firearm that was in a taxi cab in which the plaintiff had been riding and cocaine that the police found on his person.  See id. at 142.  In the criminal proceeding, the plaintiff had moved for, and been denied, a motion to suppress the firearm, after which the plaintiff pled guilty and was

-8-

jailed.  See id.  More than two years later, the Appellate division reversed the plaintiff's conviction on the grounds that the police had no probable cause to stop and search the taxi in which he was riding.  See id.  In the ensuing § 1983 suit, the plaintiff sought compensatory damages relating to his conviction and two years of incarceration.  See Townes v. City of New York, 176 F.3d at 149.

The Second Circuit in Townes v. City of New York found that, under the common law, only a cause of action for malicious prosecution permits damages for confinement imposed pursuant to legal process.  See id.  Because the plaintiff did not allege the elements of malicious prosecution, the Second Circuit in Townes v. City of New York found that the plaintiff could not recover damages for his incarceration.  See id.  The Second Circuit also reasoned that "the chain of causation between a police officer's unlawful arrest and a subsequent conviction and incarceration is broken by the intervening exercise of independent judgment."  Id. at 147.  Thus, because of the intervening act by the trial court of denying the plaintiff's motion to suppress, the illegal search and seizure was not the proximate cause of the plaintiff's incarceration.  See id.

In contrast to the Second and Third Circuits, the United States Court of Appeals for the Ninth Circuit has stated that a plaintiff may recover, as damages for a Fourth-Amendment violation, expenditures for legal representation incurred while litigating the underlying criminal proceeding. See Borunda v. Richmond, 885 F.2d 1384, 1389 (9th Cir. 1988).  The Ninth Circuit in Borunda v. Richmond reasoned:

> A plaintiff who establishes liability for deprivations of constitutional rights actionable under 42 U.S.C. § 1983 is entitled to recover compensatory damages for all injuries suffered as a consequence of those deprivations. Such damages are calculated in most circumstances according to general tort law principles applicable to the types of deprivations proved. See generally Carey v. Piphus, 435 U.S. 247 . . . (1978). The victim of the constitutional deprivation is entitled to compensation for economic harm, pain and suffering, and mental and emotional distress that results from the violations. See id. at 257-64 . . . .

Borunda v. Richmond, 885 F.2d at 1389.  According to the Ninth Circuit in Borunda v. Richmond, the plaintiffs' "expenditures for legal representation during the prior criminal proceeding most assuredly constitute economic harm. The reasonable amount of these expenditures, if proved to the jury's satisfaction to be the consequence of appellants' illegal conduct, is recoverable as compensatory damages."  Id. at 1390.

The United States Court of Appeals for the Seventh Circuit has also stated, without more explanation: "A plaintiff in a civil rights action should be allowed to recover the attorneys' fees in a state criminal action where the expenditure is a foreseeable result of the acts of the defendant." Kerr v. City of Chicago, 424 F.2d 1134, 1141 (7th Cir. 1970).

## ANALYSIS

Train contends that the Court should not admit the testimony of two of Simmons and Pettit's witnesses: Ellzey and O'Neill.  Simmons and Pettit in turn argue that Train should not be allowed to introduce evidence of his damages for the ten-month period of incarceration and of the costs he incurred in defending himself against the criminal charges because such damages are not recoverable in this case.  The Court finds that Ellzey's and O'Neill's testimony is not relevant to damages.  The Court also finds that Train can seek to recover the costs he incurred in defending himself against the federal criminal charges and the lost income for the ten months he spent incarcerated in a federal facility.  Because Train can recover those damages, the Court will allow him to introduce evidence relevant to them at trial.

## I.    SIMMONS AND PETTIT HAVE NOT ARTICULATED HOW TESTIMONY FROM ELLSEY AND O'NEILL IS RELEVANT TO THE DAMAGES ISSUES THAT WILL BE TRIED.

The testimony of Ellzey and O'Neill relates to why officers initiated contact with Train.  The trial in this case involves only the damages that Train alleges he suffered as a result of the illegal

search.  The Defendants have not articulated why Ellzey's and O'Neill's testimony would be relevant to damages.  Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  Fed. R. Evid. 401.  Evidence about the basis for the officers' initial response to Train's apartment does not appear to have any tendency to make Train's damage claims more or less likely.  Train is asking for legal costs incurred in defending himself against the federal criminal charges, compensation for the ten months he spent incarcerated in a federal facility, and emotional-distress damages related to the incarceration.

Evidence about the reasons for which the officers initiated contact with Train may have relevance to whether the officers had probable cause to conduct a search.  The Court has already determined, however, that the search was illegal.  The remaining damages issues do not implicate the officers' reasons for conducting the initial search.  The Court is also concerned that evidence about the domestic dispute that led up to the search and arrest may inject substantial unfair prejudice and may confuse the issues.  See Fed. R. Evid. 403.  The Court will therefore exclude the testimony of Ellzey and O'Neill.

## II.   THE COURT WILL PERMIT TRAIN TO INTRODUCE EVIDENCE OF HIS DAMAGES, INCLUDING COSTS INCURRED IN DEFENDING HIMSELF AGAINST THE FEDERAL CHARGES AND LOST WAGES WHILE HE WAS INCARCERATED IN A FEDERAL FACILITY FOR TEN MONTHS.

The parties agree that the more important determination the Court must make in ruling on this motion is whether damages in this case should extend to post-indictment legal process.  After examining the existing case law and the relevant legal principles, the Court finds that a plaintiff who establishes liability for deprivations of constitutional rights actionable under 42 U.S.C. § 1983 is entitled to recover compensatory damages for all injuries suffered as a consequence of those

deprivations.  The recovery should be guided by common-law tort principles – including principles of causation – and tailored to the interests that the Tenth Circuit has stated the Fourth Amendment protects.  Those interests include liberty, property, and privacy interests – a person's sense of security and individual dignity.   In appropriate circumstances, such damages may include damages flowing from post-indictment legal process, such as costs incurred in defending against charges brought as a result of an unlawful search, losses incurred because of incarceration while defending against the charges, and appropriate emotional distress damages.

Simmons and Pettit urge the Court to adopt the analysis that the Third Circuit articulated in Hector v. Watt.  The Court believes, however, that the Third Circuit in Hector v. Watt adopted an overly narrow interpretation of Carey v. Piphus and of the Fourth Amendment in reaching its result. "[O]ver the centuries the common law of torts has developed a set of rules to implement the principle that a person should be compensated fairly for injuries caused by the violation of his legal rights."  Carey v. Piphus, 435 U.S. at 257-58.  Moreover, "[t]hese rules, defining the elements of damages and the prerequisites for their recovery, provide the appropriate starting point for the inquiry under § 1983 as well."  Carey v. Piphus, 435 U.S. at 258.  In looking to common-law rules as a starting point for the analysis, it is often the case that the interests that a common-law tort doctrine protects parallel or overlap with interests that a constitutional right protects.  See Carey v. Piphus, 435 U.S. at 258.  In such cases, the Court agrees that it is useful to look to the specific common-law doctrine that the constitutional violation at issue implicates.  Following this principle, the Third Circuit held that, in § 1983 suits where plaintiffs suffer illegal searches, the injuries extending beyond post-indictment proceedings would not be compensable in any common-law tort. See Hector v. Watt, 235 F.3d at 157.  Thus, the Third Circuit ruled out what it believed to be the possible routes of recovery, under common law, for post-indictment legal process, and explained:

> If his claim is categorized as being like false arrest, then his claim fails because false arrest does not permit damages incurred after an indictment, excluding all the damages he seeks. But if his claim is treated as resembling malicious prosecution, then he would face the problem that a plaintiff claiming malicious prosecution must be innocent of the crime charged in the underlying prosecution.

Id. The Third Circuit also noted that, if the plaintiff characterized the deprivation as trespass, he would similarly be unable to recover under the principles of that tort. See id.

The Court is not convinced, however, that, because a plaintiff could not successfully plead a common law-tort, or because the most closely analogous tort would not permit the extent of recovery that the plaintiff seeks, he or she should be unable to recover in a § 1983 claim. As the Supreme Court has noted: "[T]he interests protected by a particular constitutional right may not also be protected by an analogous branch of the common law of torts. . . ." Carey v. Piphus, 435 U.S. at 258. This language from Carey v. Piphus suggests that, even if the available common-law tort theories would not permit recovery, the constitutional right in question might implicate interests which, if violated, might merit compensation. The Supreme Court has defined what the Court believes to be a workable approach to handling such situations.

First, as the Supreme Court noted in Carey v. Piphus, a district court must examine the constitutional deprivation in question to determine what interests the deprivation implicated. See Carey v. Piphus, 435 U.S. at 258 (stating that "the rules governing compensation for injuries caused by the deprivation of constitutional rights should be tailored to the interests protected by the particular right in question"). The court can then apply common-law principles to determine whether the right in question implicates the interests for which a plaintiff seeks damages.

In this case, Train has established that Simmons and Pettit violated his Fourth-Amendment rights to be free from an illegal search. Because Train seeks damages for that violation, the Court must evaluate the interests that the Fourth Amendment protects to determine whether the damages

he seeks are available.  The Tenth Circuit has spoken about the interests that the Fourth Amendment protects, stating: "[T]he interests protected by the Fourth Amendment are not confined to the right to be secure against physical harm; they include liberty, property, and privacy interests – a person's sense of security and individual dignity."  Holland ex rel. Overdorff v. Harrington, 268 F.3d 1179, 1196 (10th Cir. 2001) (internal quotation omitted).

Given the Tenth Circuit's statement on the interests that the Fourth Amendment protects, the rules governing damages available in a § 1983 suit alleging a Fourth-Amendment violation should be tailored to protecting an individual's liberty, property, privacy, and sense of security and individual dignity.  The Third Circuit, in discussing the liberty interests at stake in a Fourth Amendment violation, mentioned only privacy.  See Hector v. Watt, 235 F.3d at 157 ("The evil of an unreasonable search or seizure is that it invades privacy, not that it uncovers crime, which is no evil at all.")(citations and internal quotation marks omitted).  The Tenth Circuit does not take such a narrow view of the Fourth Amendment.  According to the Tenth Circuit's guidance on the Fourth Amendment, any damage award available for a Fourth-Amendment violation under 42 U.S.C. § 1983 should be tailored to compensating losses of liberty, property, privacy, and a person's sense of security and individual dignity.  While it may not be an evil to uncover crime, the drafters obviously did not think uncovering crime was a higher value than protecting and securing a person's home from unreasonable searches.  Federal criminal charges, federal detention, and all of the negative consequences of those charges and attendant to federal custody implicated Train's interest in liberty and his sense of security and individual dignity.  That imprisonment occasioned economic losses.  Such losses should be compensable, given that they implicate the interests that the Tenth Circuit has explained the Fourth Amendment protects.

Although the damages that Train asserts fall within the ambit of the Fourth Amendment, the

-14-

Court must still be mindful of the common-law tort principle that tortfeasors should be held liable only for those injuries that their breaches of duty actually and proximately cause. A § 1983 plaintiff might assert harms which, although related to the constitutional violation in a but-for sense, are causally too unrelated to the violation, either because they were not foreseeable or because independent intervening events cut off liability for them. In this case, for example, the Defendants have argued that independent intervening acts by others proximately caused Train's injuries. "Ordinarily what constitutes proximate cause is a question of fact . . . ." Thom v. Bristol-Myers Squibb Co., 353 F.3d 848, 855 (10th Cir. 2003)(citing Eck v. Parke, Davis & Co., 256 F.3d 1013, 1017 (10th Cir. 2001)). Proximate cause becomes a legal question when there is no evidence from which a reasonable jury could find a causal connection between the deprivation and the alleged harm. See Thom v. Bristol-Myers Squibb Co., 353 F.3d at 855.[2]

The parties in this case dispute causation. Train has evidence of injuries, including legal costs, lost wages, and emotional distress, which a reasonable jury might find were a foreseeable consequence of the constitutional deprivation and which would not have occurred absent the constitutional deprivation. A reasonable jury might infer from the evidence that the constitutional deprivation proximately caused Train's asserted losses. On the other hand, Simmons and Pettit have evidence that other parties, including possibly Train himself, his criminal defense attorney, and the

---

[2] The Court is not saying that an arraignment or some other event could never be an independent intervening cause, breaking the connection between the illegal search and the resulting criminal defense fees. For example, there could be situations were officers have seized some evidence legally and other evidence illegally, and, at the arraignment, the court determines there is sufficient evidence to go forward. Down the road, some evidence is found to be illegally seized, but the case proceeds on the legally seized evidence. In such situations, the arraignment may be an appropriate independent intervening cause. In any case, all the Court is saying here is that the Court is not prepared to say in this case, as a matter of law, that the arraignment should bar all recovery of any legal fees. The jury should decide whether the arraignment in this case breaks the chain of causation.

grand jury that returned an indictment against him, proximately caused the asserted injuries.  In light of the evidence, the Court believes proximate cause in this case is appropriately left to a jury.  Train may argue to the jury that, but for the illegal search at his home, he would not have had to face the charges he did and would not have had to be incarcerated, he would not have incurred expenses defending himself, and he would have avoided the emotional distress he asserts he suffered.  Moreover, such charges, with their attendant litigation expenses,  incarceration, and emotional distress, could foreseeably flow from the illegal search, given that the primary purpose of a search is frequently to recover fruits of crime for the purpose of bringing a criminal prosecution.

Simmons and Pettit have made a series of policy arguments why the Court should find, as a matter of law, that post-indictment losses are not compensable under 42 U.S.C. § 1983.  First, Simmons and Pettit repeat an argument that the Third Circuit made in Hector v. Watt, that, if post-indictment damages are available under 42 U.S.C. § 1983, officers could face "vast liability" for even modest intrusions upon an individual's privacy in violation of the Fourth Amendment.  Hector v. Watt, 235 F.3d at 159.  The Court believes Simmons and Pettit – and the Third Circuit – overstate the danger of liability.  When plaintiffs seek civil damages for illegal searches, their post-indictment litigation costs from the underlying criminal case are usually going to extend to successfully litigating a motion to suppress, or shortly thereafter, given that the plaintiffs' success on the motion to suppress will often have led to the dismissal of charges which animated the plaintiffs' civil rights suit.  Costs for successfully obtaining suppression of evidence will not generally be "vast."[3]  In

---

[3] In this case, Train sought $ 10,000.00 for the legal fees he incurred in successfully defending the federal criminal case against him.  Whereas, malicious prosecution and abuse-of-process claims often must be litigated to the end for the § 1983 plaintiff to be successful in the underlying case, and the § 1983 plaintiff may seek to recover reasonable fees, a § 1983 plaintiff bringing a claim for an illegal search will typically have modest fees, such as would be incurred litigating a single, successful suppression motion.  While there may be a reason to cut of excessive

contrast, a plaintiff in a Fourth-Amendment malicious prosecution claim could potentially subject officers to much greater liability, given that the damages available can extend beyond indictment to the entire criminal proceeding.  The specter of such liability has not caused the Tenth Circuit to abolish Fourth Amendment malicious prosecution claims.  The generally more modest damages available in a suit such as Train's should therefore not be considered too vast for officers to bear.

Second, Simmons and Pettit again cite the Third Circuit for the proposition that allowing post-indictment damages for a Fourth-Amendment violation under 42 U.S.C. § 1983 would amount to a "continued" application of the exclusionary rule to which Train, and plaintiffs like him, are not entitled.  Hector v. Watt, 235 F.3d at 159.  The Third Circuit framed the issue in these terms: "The issue we must resolve is whether [the plaintiff] can continue to benefit from the exclusionary rule in his § 1983 suit and be relieved of defense costs from a prosecution that was terminated only because of the exclusionary rule."  Hector v. Watt, 235 F.3d at 159.  In other words, the exclusionary rule resulted in the plaintiff receiving a windfall in his criminal trial, and the plaintiff should not be allowed to draw further benefit from this windfall by recovering his costs in receiving it.  The Court, however, is reluctant to credit this argument, which appears to assume that the plaintiff was guilty of the underlying criminal charge and was released only because of the exclusionary rule.  Innocent individuals can suffer Fourth-Amendment violations that result in inculpatory evidence being gathered against them sufficient to convince a grand jury to indict them.  Innocent individuals who are successful in getting that illegally seized evidence suppressed should be able to recover damages that the constitutional deprivations they suffered proximately caused, regardless of the benefit they received from the exclusionary rule.

---

fees in some situations, it is unlikely to be a reason to preclude recovery for fees in an unlawful search case.

Aside from their policy arguments, the Defendants note that, in an earlier memorandum opinion and order, the Court precluded § 1983 a plaintiff from recovering attorney's fees incurred during the criminal trial underlying his civil rights claim.  See Taylor v. Hudson, Civ. No. 02-0775, Memorandum Opinion and Order at 4-6 (D.N.M. 2003).  In Taylor v. Hudson, the Court disallowed a proffered instruction to the jury to consider attorney's fees incurred in the underlying criminal trial.  See Civ. No. 02-0775, at 4.  The Court in Taylor v. Hudson noted that the plaintiff had initially brought claims for both malicious prosecution and false arrest, and that the malicious-prosecution claim was no longer a part of the case.  See id.  The Court followed the Supreme Court's guidance to look to the common law of false arrest, which does not allow post-arraignment damages.  The Court therefore noted:

> Under the common law of false arrest, the Plaintiff's damages would be limited to the period of time before the judicial process began.  Because the Court has granted summary judgment on the claim for malicious prosecution, there is no basis for recovery beyond that point.  There is no evidence in the record of fees or costs before Davis charged the Plaintiff.  Accordingly, the attorney's fees incurred during the criminal trial are not recoverable under a claim of false arrest.

Id. at 5.

In contrast to the plaintiff in Taylor v. Hudson, Train is not arguing a § 1983 claim for false arrest at this point.  The Court is therefore not bound to adhere to the common-law contours of that tort.  Train's constitutional claim is based on the illegal search, and he seeks damages that are a proximate result of that violation.  The Court has determined that, consistent with what the Supreme Court has instructed in Carey v. Piphus, it is sometimes necessary to craft damages that are tailored to the interests that the constitutional right in question reflects, even where analogous common-law doctrines are not tailored to the same interests.  The plaintiff in Taylor v. Hudson did not establish that the constitutional violation he allegedly suffered impacted interests beyond those that the

-18-

common law analogs he presented to the Court protected. Train has done so and is entitled to seek damages for post-indictment proceedings.

In sum, the Court finds that Train is entitled to pursue damages for post-indictment process, including his detention in the federal facility, his fees in defending the federal criminal charges, and damages for the emotional distress that he suffered. Given the Court's determination on that issue, the evidence that Train plans to present to the jury about such damages is relevant and admissible. This case is not – at least not as a matter of law – a "one dollar case." The jury might decide to award only nominal damages, but the Court should not make that decision. Train has evidence from which a reasonable jury might infer that the Defendants' actions proximately caused him damages for incarceration in the federal facility, legal fees for defending against the federal criminal charges, and emotional distress. The Court will permit him to present that evidence to the jury.

**IT IS ORDERED** that the Plaintiff's Motion in Limine I Exclusion of Evidence Related to Police Investigation of Domestic Violence is granted. The Court will exclude the testimony of Heather Ellzey and Danielle O'Neill. The Court will also permit Plaintiff Steven Train to present evidence on damages for incarceration in a federal facility, costs in defending himself against federal criminal charges, and emotional distress damages.

_____
UNITED STATES DISTRICT JUDGE

-19-

*Counsel*:

Mary Louise Boelcke
Law Office of Mary Louise Boelcke
Albuquerque, New Mexico

 -- and --

Joseph P. Kennedy
Shannon L. Kennedy
Kennedy Law Firm
Albuquerque, New Mexico

       *Attorneys for the Plaintiff*

Robert M. White
  Albuquerque City Attorney's Office
Kathryn Levy
  City of Albuquerque Legal Department
Albuquerque, New Mexico

       *Attorneys for the Defendants*